GUARDIAN TRUST COMPANY OF NEW YORK, Respondent, v. ROSA W. STRAUS, Individually and as Executrix, etc., of LOUIS STRAUS, Deceased, Appellant, Impleaded with the MUTUAL BENEFIT LIFE INSURANCE COMPANY and Others, Defendants.

First Department, June 10, 1910.*

Insurance — Domestic Relations Law, section 22, construed — statute applicable to policies negotiated by husband — facts not showing part payment of premium by wife — application of statute to policies issued by foreign company — burden of proof.

Section 22 of the Domestic Relations Law, providing that the portion of insurance on a husband's life purchased by the excess of an annual premium over $500 shall be liable for his debts, applies to a policy negotiated by a husband and payable to his wife as well as to policies which are negotiated by the wife herself.

As such excess is an equitable asset applicable to the satisfaction of all the husband's debts, it is not necessary that the excess premiums be paid after a debt was incurred in order that the creditor may share in the proceeds.

Evidence in an action brought by a creditor to subject the excess proceeds of such policy to the husband's debts examined, and held, insufficient to show that the wife of the insured furnished money to pay a portion of the premiums so that those paid by the husband did not exceed $500.

---

* For other First Department June cases reported in full in this volume, see ante, pp. 1-139.— [REP.

The mere facts that the wife cohtribted to the household expenses and charged her husband with the rent of the premises used as a residence, are insufficient to show that such sums were advanced by her to pay premiums, but merely give her standing as a creditor of the husband.

A wife contending that policies issued by foreign insurance companies are not subject to the provisions of section 22 of the Domestic Relations Law in that they were not negotiated here, is under the burden of showing that fact.

An action by a creditor on behalf of himself and other creditors to subject the excess of the proceeds of such policy to the husband's debts may be brought before the conclusion of the administration of his estate, but in such case it must be shown that the decedent was actually or presumptively insolvent.

APPEAL by the defendant, Rosa W. Straus, individually and as executrix, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of October, 1909, upon the report of a referee.

*William B. Ellison* [*Frank J. Ryan* with him on the brief], for the appellant.

*William S. McGuire,* for the respondent.

Judgment affirmed, with costs, on opinion of referee.

Present — INGRAHAM, P. J., McLAUGHLIN, LAUGHLIN, SCOTT and DOWLING, JJ.

The following is the opinion of the referee:

WILBUR LARREMORE, Referee :

This suit was brought by the plaintiff as a creditor of Louis Straus, deceased, in behalf of itself and all other creditors, for the purpose, among others, of having it adjudged that that portion of the aggregate amount of life insurance policies upon the life of said Louis Straus purchased by the excess of premiums above $500, annually, out of his property, be brought into court and administered according to law for the benefit of said creditors. The various life insurance companies are parties defendant. The action is brought under section 22 of the Domestic Relations Law (Laws of 1896, chap. 272), which is as follows: " Insurance of husband's life.— A married women may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his

natural life. Where a married woman survives such period or term, she is entitled to receive the insurance money, payable by the terms of the policy, as her separate property, and free from any claim of a creditor or representative of her husband, except, that where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts. The policy may provide that the insurance, if the married woman dies before it becomes due and without disposing of it, shall be paid to her husband or to his, her or their children, or to or for the use of one or more of those persons; and it may designate one or more trustees for a child or children to receive and manage such money until such child or children attain full age. The married woman may dispose of such policy by will or written acknowledged assignment to take effect on her death, if she dies thereafter leaving no descendant surviving. After the will or the assignment takes effect, the legatee or assignee takes such policy absolutely.

"A policy of insurance on the life of any person for the benefit of a married woman, is also assignable and may be surrendered to the company issuing the same, by her, or her legal representative, with the written consent of the assured."

The history of the legislation leading up to this statute, as well as a full exposition of the legislative intention in enacting it, are given in *Kittel* v. *Domeyer* (70 App. Div. 134). The court, per McLaughlin, J., said (p. 140): "The statute provides that that portion of the insurance money which was purchased by excess of premiums above $500 is 'primarily' liable for the husband's debts. The word 'primarily' is used as a synonym for the word 'first' — that is, that the excess of the insurance shall be first liable for the husband's debts, and secondly that after the husband's debts have been satisfied, the remainder of the excess shall belong to the wife. If we are right in thus construing the statute, it necessarily follows that this excess of insurance is a fund for not one but all the creditors of the deceased. It is an equitable asset of the estate of the husband who died insolvent, without sufficient property to pay all his just debts. Therefore, the executor or administrator of the husband's estate, in the administration of the same, is obligated to

reduce this equitable asset to possession, under the powers conferred by chapter 314 of the Laws of 1858,* and distribute the same among all the creditors of the deceased. Of course, the wife cannot be deprived of any part of this insurance which is not necessary for the payment of the debts of the deceased. That this was the legislative intent is indicated by the phrase that this excess of insurance shall be 'primarily' liable for the payment of the husband's debts; in other words, if the husband does not leave sufficient property to pay his debts, then the claims of all the creditors are to become a lien upon the insurance purchased by annual premiums in excess of $500 and until such claims have been paid, the wife has no interest in such proceeds; that is, the proceeds of the excess of insurance is property which has been produced by the misapplication of assets of the insolvent husband and which, under the statute, forms a part of his estate to be distributed, after his other property has been exhausted, among all his creditors."

In passing upon this same case the Court of Appeals, while reversing the actual result reached by the Appellate Division, remarked (175 N. Y. 205, 211): "With the reasoning of the Appellate Division upon the legislative intent, in the enactment of the statute in question, I think we should agree. The opinion of the court is so clear and its discussion is so full that I can add nothing to it. * * * Without further discussing these questions, I reach the conclusion that the reading and interpretation of the statute by the Appellate Division were right and should be approved."

The learned counsel for the defendant Rosa W. Straus contends now, after the case is finally submitted, as he did upon a preliminary argument, that the present case is not within the section of the Domestic Relations Law above quoted, on the ground that the only purpose in passing the statute was to clear up doubts which existed as to the extent of the right of a wife to insure her husband's life. The learned counsel treats this statute purely as an enabling act, and contends that it must be construed strictly in accordance with its express terms. As there is no language that " directly or indi-

---

* See Pers. Prop. Law (Gen. Laws, chap. 47; Laws of 1897, chap. 417), § 7; revised into Pers. Prop. Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45), § 19.— [REP.

rectly refers to any insurance other than that taken out or caused to be taken out by the wife on the life of her husband," the statute, it is argued, cannot cover insurance "taken out by the husband on his own life and made payable to the wife." In other words, it is claimed that as the text of the statute authorizes a wife to cause the life of her husband to be insured, it cannot be amplified by implication to cover cases where the husband is the negotiating and procuring party. I have already, at an earlier stage of this case, expressed my dissent from this view. The terms of the statute that a married woman may "cause the life of her husband to be insured" would not exclude a case like the present where a husband with his wife's knowledge and consent obtains insurance on his life for her benefit. The important feature in this statute, as interpreted by the Appellate Division and the Court of Appeals, is not who negotiates and actually procures the insurance policies to be issued, but who pays the premiums. I cannot discover that the precise point now raised has been considered and passed on in other litigations. But it does appear that in other adjudicated cases in which this statute has been held to apply the policies were actually issued upon the application of the husband. In *Kittel* v. *Domeyer* (*supra*), which is the leading case upon the interpretation of the act, the applications were by the husband and were substantially similar to the applications for policies involved in the case at bar.

In *Kittel* v. *Domeyer* the insurance purchased by the excess of $500 annual premium is characterized as a "fund for not one but all the creditors of the deceased. It is an equitable asset of the estate of the husband who died insolvent, without sufficient property to pay all his just debts." As the fund is subject to a lien in favor of all the creditors, I cannot attach a controlling force to the argument of the learned counsel for the defendant that the premiums in excess of $500 were not paid by the deceased "after the plaintiff's debt was incurred." As matter of fact, the plaintiff is suing representatively for all the creditors. The debt of any one creditor is merely an element of the determination. If there are creditors and the decedent did not leave sufficient assets to pay all his just debts, the amount of the excess insurance becomes an equitable asset applicable to the satisfaction of all the debts.

The learned counsel for Mrs. Straus further contends that the

statute does not apply because she furnished certain moneys for the purpose of paying the premiums, and deducting the same "there was at no time during the life of the policies in question a payment by Mr. Straus of premiums in excess of five hundred dollars."

The evidence on this point consists entirely of uncorroborated statements of Mrs. Straus. The learned counsel for the defendant does not analyze or discuss this testimony in detail, nor shall I. In a general way, it may be said that Mrs. Straus avers that in the year 1902, in order to induce the decedent to take out life insurance, she agreed to furnish him out of her own funds at least $500 per year in order to pay the premiums. She attempts to show performance of this agreement on her part by testifying to contributions out of her own moneys to the expenses of the household, to payments for board by her mother and sister who were living with the defendant and her husband, and by charges against the decedent for rent of the premises occupied by them as a family residence.

As to the second of these alleged sources of revenue I cannot see why, if Mr. Straus was the head of the family and furnished, partly from his own funds and partly from gifts or borrowings from his wife, the money to meet the household expenses, the sums collected for board did not presumably belong to him. Regarding the claim for rent, Mrs. Straus testifies that she had given to her husband certain bonds belonging to her, the proceeds of which were used in his business, and that thereafter in repayment of such amount he purchased in her interest, and so that she became the equitable owner of, the house in question. Concerning the claims both of direct contributions to the family expenses and for rent, it may be said that it is not unusual for a wife, who has means, to add to the family income so as to authorize a more generous scale of living, or if she is the legal owner — here nothing is asserted but equitable ownership — of a house, to permit her husband to occupy it with her as a family residence, rent free.

As already observed, the alleged original agreement to furnish the decedent with funds, as well as the various alleged methods by which it was carried out, have nothing to support them but Mrs. Straus' uncorroborated evidence. Much of it is inherently improbable; she did not keep accounts and does not produce vouchers other than her own checks; she does not attempt to show her

alleged contributions exactly, giving merely vague and unsatisfactory estimates. The case, on this branch of it, is typical of a large number, several of which are cited in the brief of the learned counsel for the plaintiff. Indeed, as counsel for plaintiff shows by an extract in his brief, the case at bar, on the facts as well as the law, resembles *Kittel* v. *Domeyer* (*supra*). The authorities are practically unanimous that under such circumstances as are here disclosed the testimony of the single interested witness is to be searchingly scrutinized, and the presumption is against its credibility. The burden is upon the wife, and she is held to convincing affirmative proof. I am of opinion that the defendant has not met such burden, and that a finding that she had furnished moneys to her husband in the various methods she claims to have done would not be authorized.

The evidence certainly would not permit a finding, as against creditors, of the making of the original contract to furnish at least $500 per year and, in effect, decreeing a specific performance thereof. In the purely legal aspect, all of the facts attempted to be shown, even if they were true, would be immaterial. According to her own statements Mrs. Straus did not pay the premiums herself, but directly or indirectly furnished the insured with money. If the premiums were traceable through the husband's hands and identifiable in the hands of the insurer as coming from the beneficiary, a different case might be presented. Nothing further is attempted to be proved than contributions to the husband's general assets by the wife and payment of premiums by the husband. Defendant's legal status, therefore, according to her own showing, would seem to be merely that of a creditor of her husband, and to establish this would not be sufficient to take the policies out of the operation of the statute. Section 22 of the Domestic Relations Law is a broad remedial act for the benefit of both the wife and the creditors; it establishes an " equitable asset" subject to the lien of creditors, where the premiums are actually paid out of the husband's property. And the premiums are no less paid out of the husband's property because the wife renders it easier for him to do so by giving or lending him money that is used to defray household expenses.

The learned counsel for the defendant further claims that such of the policies in question as were issued by corporations organized

under the laws of other States are not controlled by the New York statute.    He cites upon this point section 92 of Richards on Insurance Law (3d ed.), which lays down the proposition that " Ordinarily the laws and the usages of the place where the contract of insurance is made are to be applied in its interpretation and construction."

The concluding sentence of section 92 of Mr. Richards' treatise is : " As a general thing the contract is considered made where the last act necessary to complete it is done."

The testimony is not at all full upon the details of the issue of these policies, but certain facts appear.    All of the policies had indorsed upon them the names and addresses of agents in New York.    There is testimony as to some of the policies that they were actually negotiated and premiums paid through the New York offices.    The tendency of the courts in all American jurisdictions is to hold that foreign insurance companies, and the business conducted by them, are controlled and regulated by domestic statutes of general application. (*Strauss* v. *Union Central Life Ins. Co.* 170 N. Y. 349; *Presbyterian Ministers' Fund* v. *Thomas*, 126 Wis. 281.)

Before the present action was commenced Mrs. Straus had brought individual actions against the insurance companies in the courts of New York, and the present action supersedes such individual actions.    In my judgment the burden is upon the defendant to show that the New York statute does not apply to all the policies.    If the circumstance that some or all of the policies were actually foreign contracts be material, it may be said that such proof as there is in the case tends quite as much if not more to show that they were New York as that they were foreign contracts.

Strictly speaking, an action of this character should be brought after the conclusion of administration and the establishment of insolvency.    It was held, however, in *Kittel* v. *Domeyer* that the action, though brought before the conclusion of administration, was not premature but might be allowed to proceed.    Accordingly, I have held that this action was not prematurely brought.    In an action commenced before the conclusion of administration some proof of the existence of creditors must be necessary in order to authorize relief.    Just how much proof of this character is required may be problematical.    In the *Domeyer* case it was asserted in the

opinion that the decedent was insolvent. I have admitted extensive proof on the question of insolvency. Evidence of the decedent's books of account and of his declarations was received, ruling being reserved as to the competency of the same as against the defendant Rosa W. Straus individually. This testimony was admitted as bearing on the question of insolvency, and I have concluded to receive it as against the defendant individually as well as in her representative capacity. Upon all the testimony in the case I shall find that the insured died insolvent. Outside of the evidence of account books and the decedent's declarations, however, there is ample proof that Louis Straus died owing many debts, and evidence of assets sufficient to pay the same has not been adduced. If an action may be brought before administration, as has been countenanced in the *Domeyer* case, a finding of the latter limited scope must be sufficient to support it.

I shall accordingly find, on the evidence outside of the books and the decedent's declarations, that he died largely indebted and that it does not appear that he possessed sufficient assets to pay his debts, and I shall find on all the evidence that he died insolvent.

The fund resulting from the payment of premiums over $500 must remain impounded to await administration. As has been shown, this fund is one for the benefit of all the creditors. There has been no advertisement for creditors' claims; there may be creditors other than those now before the court or otherwise known who are entitled to participate in the distribution.

The report, therefore, will recommend the entry of a judgment directing that the fund now on deposit with the Empire Trust Company remain there, or be placed with such other depository as the court shall direct, to await the conclusion of administration.

Counsel for plaintiff may prepare a report in accordance with the above views, to be settled on notice, and, as heretofore understood, counsel for defendant may submit requests for findings of fact and conclusions of law.

# CASES REPORTED WITH BRIEF SYLLABI

AND

# DECISIONS HANDED DOWN WITHOUT OPINION.