464

EDWARD J. HANCY, EXECUTOR OF THE WILL OF MARIA C. HONE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11562.   Promulgated September 25, 1929.

*Francis Smythe, Esq.,* and *Clarence Castimore, Esq.,* for the petitioner.

*J. L. Deveney, Esq.,* for the respondent.

466

## OPINION.

Morris: The first question raised by this proceeding is whether the value of property of three separate trust funds should be included in Maria C. Hone's estate as property passing under the exercise of general powers of appointment. The respondent has held that the properties passed under the exercise of the general powers of appointment, and contends that the value thereof should be included in decedent's gross estate in accordance with section 402 (e) of the Revenue Act of 1918. The petitioner contends (1) that no tax is leviable on a power which transfers no benefits, and that in order for respondent to levy the tax under section 402 (e), it is necessary that some property rights should have passed by reason of the exercise of the powers; and (2) that the several trust properties should not be included in decedent's gross estate since the properties were not a part of her estate, were not subject to her debts, nor were they distributable by her executors as a part of her estate, and that paragraphs (a) and (e) of section 402 should be read and construed together.

The Revenue Act of 1918 provides by section 401 that " a tax is * * * hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act * * *." It is further provided that a decedent's " net estate " shall be determined by including the miscellaneous items of property set forth in section 402 in his " gross estate." The " gross estate " is then re-

duced by the deductions provided for in section 403; the remainder is the statutory "net estate." The pertinent provisions of section 402 are as follows:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;

*      *      *      *      *      *      *

(e) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth.

Our first concern is with the construction and interpretation that is to be given section 402(e), *supra*, which specifically includes in the decedent's gross estate any property passing under the exercise of a general power of appointment. This provision is new in the Revenue Act of 1918. In the report by the Committee on Ways and Means of the House of Representatives, 65th Cong. 2d sess., Rept. No. 767, at page 41 the Committee explains it as follows:

There has also been included in the gross estate the value of property passing under a general power of appointment. This amendment as well as that preceding is for the purpose of clarifying rather than extending the existing statute. A person having a general power of appointment, is, with respect to disposition of the property at his death, in a position not unlike that of its owner. The possessor of the power has full authority to dispose of the property at his death, and there seems to be no reason why the privilege which he exercises should not be taxed in the same degree as other property over which he exercises the same authority. The absence of a provision including property transferred by power of appointment makes it possible, by resorting to the creation of such a power, to effect two transfers of an estate with the payment of only one tax.

The Supreme Court in commenting on that portion of the report in *United States* v. *Field*, 255 U. S. 257, which case arose under the Revenue Act of 1916, stated that it was evident that it was based upon the interpretation of the Act of 1916 adopted by the Treasury Department, and the fact that the Committee proposed that the law be amended shows that the Treasury construction was not treated as a safe reliance. The insertion of that provision in the opinion of the court indicated that Congress at least was doubtful whether the previous act included property passing by appointment and the court held that that act did not include such property. The reasons for its so holding are conducive to an understanding of the problem before us. Section 202 of the Revenue Act of 1916 provides that

the value of the gross estate is to be determined by including the value at the time of death of all property to the extent of the interest therein of the decèdent at the time of death which after his death is subject to the payment of the charges against his estate and the expenses of its administration, and is subject to distribution as a part of his estate. The chief reliance of the Government in support of including the appointed property in the decedent's gross estate was, in the language of the court, "on the rule well established in England and followed generally, but not universally in this country that where one has a general power of appointment either by deed or by will, and executes the power, equity will regard the property appointed as part of his assets for the payment of his creditors in preference to the claims of his voluntary appointees." In answer to the Government's claim the court said:

The existence of the power does not of itself vest any estate in the donee. [Cases cited.]

Where the donee dies indebted, having executed the power in favor of volunteers, the appointed property is treated as equitable, not legal assets of his estate, [Cases cited.] and (in the absence of statute) if it passes to the executor at all, it does so, not by virtue of his office, but as a matter of convenience, and because he represents the rights of creditors. [Cases cited.]

Where the power is executed, creditors of the donee can lay claim to the appointed estate only to the extent that the donee's own estate is insufficient to satisfy their demands. [Cases cited.]

 *         *         *         *         *         *         *

And, whether the power be or be not exercised, the property that was subject to appointment is not subject to distribution as part of the estate of the donee. If there be no appointment, it goes according to the disposition of the donor. If there be an appointment to volunteers, then, subject to whatever charge creditors may have against it, it goes not to the next of kin or the legatees of the donee, but to his appointees under the power.

It follows that the interest in question, not having been property of Mrs. Field [donee] at the time of her death, nor subject to distribution as part of her estate, was not taxable under clause (a).

 *         *         *         *         *         *         *

It would have been easy for Congress to express a purpose to tax property passing under a general power of appointment exercised by a decedent had such a purpose existed; and none was expressed in the act under consideration. In that of February 24, 1919, which took its place, the section providing how the value of the gross estate of the decedent shall be determined contains a clause precisely to the point   (Section 402 [e].)

The petitioner contends that the trust properties should not be included in decedent's gross estate, since the properties were not a part of her estate, were not subject to her debts, nor were they distributable by her executors as a part of her estate.   Such a contention was held to be good by the Supreme Court in the above case under the 1916 Act, but it is a logical inference that if that Act had contained a provision similar to section 402 (e) of the 1918 Act, the court would

have held that the property in question should have been included in the gross estate, although it was not the property of the decedent at the time of her death. *Minis* v. *United States*, 66 Ct. Cls. 58; 278 U. S. 657. Whatever reason existed for the insertion in the 1918 Act of the provision in question, it is clear that Congress by that provision expressed a purpose to tax property passing under a general power of appointment exercised by a decedent regardless of the nature of the decedent's interest in the appointed property. *Pennsylvania Co. for Insurance on Lives, etc.,* v. *Lederer*, 292 Fed. 629. Three questions then are presented for determination in this proceeding: (1) Was the power of appointment general? (2) Was there an exercise by the decedent of that power? (3) If so, did property pass thereunder?

The Federal courts have had occasion to pass on what constitutes a general power. In *Whitlock-Rose* v. *McCaughn*, 21 Fed. (2d) 164, the court, speaking with reference to section 402 (e) of the Revenue Act of 1918, commented on general powers as follows (p. 165):

\* \* \* The power which Congress had in mind, and which it called "general," was a power which could be exercised by either *will or deed*, and did not have to include both. A decedent could select either method, by will or deed, by which a power could be exercised by a donee. Either method, if the donee of the power is not restricted as to appointees, complies with the statute, and the power is general.

This use of the term, "general power of appointment," is in harmony with general usage. A power is regarded as "general" when it is not restricted by the donor to particular objects or beneficiaries, though the method of exercising it may be restricted and limited to a testamentary paper. *Tucker* v. *Alexander*, (C. C. A.) 15 F. (2d) 356; *Hume* v. *Randall*, 141 N. Y. 499, 503, 36 N. E. 402; *Greenway* v. *White*, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385. "A general power of appointment by will enables the donee to devise the property of [to] any person who may have the capacity to take." Underhill on the Law of Wills.

Property subject to a power of appointment under a will is a general power, and is equivalent to a fee. *Lane* v. *Lane*, 4 Pennewill (Del.) 368, 55 A. 184, 64 L. R. A. 849, 103 Am. St. Rep. 122; *Bingham's Appeal*, 64 Pa. 345; *Pennsylvania Co., etc.*, v. *Lederer* (D. C.) 292 F. 629; *Bullen* v. *State of Wisconsin*, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830. \* \* \*

We pass therefore to a consideration of the latitude and scope of the several powers which were vested in the decedent at her death. Two of the powers relate to property owned by Thomas and John Cadwalader, the third power was created by the decedent's deed of trust executed prior to her marriage. We will examine the several instruments in order to determine the kind of power created.

In point of time the first power vested in decedent was by her father's will, whereby she became entitled to the income from a

trust fund which his last will and testament carved out of his resid-uary estate. The decedent was given the income from the trust for life, and the trustees were directed upon her death to convey the corpus " to such person or persons and for such Estate " as she should " by any Deed, Will or writing," direct or appoint. The power created by Thomas Cadwalader permitted the decedent to appoint any person or persons and in such estates as she desired by will, deed or writing. The power was therefore a general power.

The second power of appointment was created by decedent by deed which conveyed her separate property in trust, the income from which was payable to her for life, and upon her death the trustees were to " forthwith convey, assign, pay over and distribute the said trust property and estate, * * * to and among such person or persons, institution or institutions, in such proportions and for such estates and on such terms and conditions * * * " as she should " direct and appoint in and by such last Will and Testament, or instrument of appointment in the nature thereof." In default of an exercise of the power reserved, the decedent directed the trustees to pay the income to her husband during his life and from and after his death to divide the trust among her children. This power created by the decedent falls within the definition of general powers which we have heretofore set forth.

The third power of appointment was vested in decedent by her brother, who left certain property in trust with income payable to his sister for life. Upon her death he directed the trustees to " convey, pay over and transfer the trust property to such person, persons, or corporation, and on such terms and conditions, whether in trust or otherwise, as she should by last will and testament or instrument of the nature thereof direct or appoint, * * *." In default of the exercise of the power the trust corpus went to and among her issue surviving in equal shares. This power is as broad and unlimited as either of the other two, and we have no hesitancy in holding that it should be classified as a general power.

An examination of the decedent's will and the codicil thereto clearly shows an exercise of the powers of appointment. In her will she specifically referred to her intention to exercise the power of appointment given her by her father. She provided that her residuary estate should be held in trust during the life of her husband and that two-thirds of the income therefrom should go to him, and one-third to her daughter, but that if her husband predeceased her, then to her issue in equal shares. It does not appear from the record whether John Hone survived decedent or not, but it does appear that Hester Bartol, the daughter, was the sole issue, next of kin and heir at law. By the codicil to her will the decedent ex-

pressly exercised the second power of appointment. Nor is there any doubt in our minds that the decedent intended to and did exercise the power vested in her by her brother, even though her will contains no specific reference thereto. In this regard it is pertinent to remark that the codicil to her will was executed in February, 1911, whereas her brother died in 1914. After his death decedent failed to refer by a second codicil to the disposing power given by her brother, so that we must look to the general language of her will to ascertain her intentions. We believe that the statements in her will and the codicil thereto that she proposes to exercise thereby all and singular any powers of appointment or disposition given her by any instruments whatever, cover the situation here, and that we are justified in holding that the decedent exercised the power vested in her, and that she appointed the property to her issue.

The further contention of the petitioner, namely, that the appointed property must form part of the estate of the decedent and there must be a transfer upon which the statute can operate directly, presents the question raised by the third requirement of the statute. We have hereinabove briefly discussed the nature of the donee's interest in the property over which there is a power of appointment. In order to more clearly understand the petitioner's argument it is necessary to again consider that interest with particular reference to the New York decisions. It is the general rule of common law, subject to certain exceptions, that the appointee of an estate takes from the original donor and not from the donee of the power. *Chanler* v. *Kelsey*, 205 U. S. 466; *Ebersole* v. *McGrath*, 271 Fed. 995; Sugden on Powers, 8th ed., p. 470. The rule in England is that a donee of a power takes a beneficial interest in the property of the power and, upon the exercise of the power, such property becomes a part of his estate, subject to his debts like his other property in preference to the claims of legatees or appointees. *Lederer* v. *Pearce*, (C. C. A., 3d Cir.) 266 Fed. 497. In the United States some of the States have expressly held that where a donee has an estate for life with a general power of appointment at his death he has to all intents and purposes a fee simple title to the property. See note in 64 L. R. A. 849. Practically all of the States, however, recognize and hold with the common law that the gift of the property comes from and is a result of the bounty of the donor. In New York the doctrine that property subject to a power of appointment under a will is equivalent to a fee has been expressly rejected, and a person having a life interest in the income from a trust together with a power of appointment of the trust corpus does not have a fee in the property. *Cutting* v. *Cutting*, 86 N. Y. 522; *In re Fowles*, 222 N. Y. 222; 118 N. E. 611. The New York courts also hold that the trust corpus

over which the life beneficiary has a power of disposition is not subject to the debts of the donee of the power.

Prior to 1897 the New York courts had had occasion to consider the force and effect of the exercise of powers of appointment. In the case of *In re Stewart's Estate*, 131 N. Y. 274; 30 N. E. 184, the court said, p. 185:

* * * The nature of estates passing under powers of appointment is well settled. "An estate", says Chancellor Kent, (4 Kent, Comm. 338,) "created by the execution of a power, takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of a power takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument creating the power had been incorporated in the one instrument". Where the donee of the power has the right of selection, the interest appointed vests in the appointee at the time of the appointment, but his title relates to and is acquired under the instrument creating the power. *Jackson* v. *Davenport*, 20 Johns. 537; 2 Sugd. Powers, p. 22. We think there can be no reasonable doubt that the appointees under the power of appointment took the interests under and by virtue of the will, and not, in a legal sense, under the instrument of January 16, 1890, in execution of the power.

Since 1897 the State of New York has, by section 220 of its transfer tax statute, subjected to the transfer tax, property which passed under the exercise of powers of appointment regardless of whether such powers were limited or general. Section 220 of the New York statute, passed in 1897, reads as follows:

Whenever any person or corporation shall exercise the power of appointment derived from any disposition of property made either before or after the passage of this Act, such appointment when made *shall be deemed a transfer taxable* under the provisions of this Act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. * * * (Italics ours.)

Section 220 of the New York transfer tax statute in force to-day is to all intents and purposes identical with the 1897 Act, quoted above. See McKinney's Consolidated Laws of New York, Book 59, pp. 366, 367.

Since the passage of the New York transfer-tax statute, which subjected property passing under the exercise of powers of appointment to the State transfer tax, the courts of that State have, by their decisions, established certain well recognized rules which they follow in determining whether property will be taxed as passing under the exercise of the power, or whether the property will be excluded in computing the State transfer tax, since such property had already passed under the terms of the original instrument. Where the appointees derive additional benefits from the exercise of the power by the donee's will, the property passes under that will as though it

were a part of the donee's estate and is subject to the transfer tax as property passing under the exercise of powers of appointment. *Delano's Estate*, 176 N. Y. 486; 68 N. E. 871; 64 L. R. A. 279; affd. *Chanler* v. *Kelsey*, 205 U. S. 466; 27 Sup. Ct. 550; 51 U. S. L. Ed. 882; *Cooksey's Estate*, 182 N. Y. 92; 74 N. E. 880; *King's Estate*, 217 N. Y. 358; 111 N. E. 1060; *Matter of Taylor*, 204 N. Y. Sup. 367; affirmed without opinion, 239 N. Y. 582; 147 N. E. 204. But, where the appointees receive less under donee's will than they would take under the donor's will, or where the attempted exercise of the power is ineffectual, so that the property passes under the donor's will, the courts hold that the transfer tax should not be imposed because the property passes, not under the will of the donee, but under and by virtue of the terms of the original instrument. *Slosson's Estate*, 216 N. Y. 79; 110 N. E. 166; *Backhouse's Estate*, 185 N. Y. 544; 77 N. E. 1181; *Ripley's Estate*, 192 N. Y. 536; 84 N. E. 1120; *Lansing's Estate*, 182 N. Y. 238; 74 N. E. 882; *In re Chapman*, 117 N. Y. Sup. 679.

In view of the adoption by the State of New York of the common law rule that the property over which a life beneficiary has power of appointment is not subject to the donee's debts and that the title of the appointee is acquired under the instrument creating the power, is there a transfer or passing of property upon the exercise of a general power in contemplation of the Federal statute so as to necessitate the inclusion of the value of the appointed property in the decedent's gross estate? The above decisions of the New York courts on the question whether there was a transfer or not under the exercise of a power of appointment are an interpretation of the law of that State. The Supreme Court of the United States has held under that law that it is the execution of the power that gives the grantee the property passing under it. *Orr* v. *Gilman*, 183 U. S. 278; *Chanler* v. *Kelsey, supra*. We are of the opinion that under the Federal statute the word " transfer " can not be taken in such a restricted sense as to refer only to the passing of property directly from the decedent to the appointee. The Supreme Court of the United States has recently had occasion to consider the meaning of the word transfer, as used in the Federal estate tax law. In *Chase National Bank* v. *United States*, 278 U. S. 327, the estate tax as assessed by the Commissioner under the Revenue Act of 1921 included $9,146.76 imposed by reason of the inclusion in the estate of the proceeds of three insurance policies, less $40,000 exemption authorized by statute. The validity of the tax was challenged on the ground that it was not an excise tax or privilege tax, but a direct tax on property. In sustaining the tax the court said in part:

It is true, as emphasized by plaintiff, that the interest of the beneficiaries in the insurance policies effected by decedent " vested " in them before his

death and that the proceeds of the policies came to the beneficiaries not directly from the decedent but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, *Cohen* v. *Samuel*, 245 U. S. 50; see *Burlingham* v. *Crouse*, 228 U. S. 459, and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, *N. Y. Domestic Relations Law*, c. 14, Consol. Laws §52; *Kittel* v. *Domeyer*, 175 N. Y. 205; *Guardian Trust Co.* v. *Straus*, 139 App. Div. 884, aff'd 201 N. Y. 546, is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death.

In *Saltonstall* v. *Saltonstall*, 276 U. S. 260, a tax had been imposed by state statute on the succession to a remainder interest which had vested under a trust created before the enactment of the taxing act. It was objected that the tax was void as retroactive and hence in conflict with the Fourteenth Amendment of the federal Constitution under the ruling in *Nichols* v. *Coolidge, supra,* later applied in *Untermyer* v. *Anderson*, 276 U. S. 440. But by the provisions of the trust indenture a power of disposition of the remainder had been reserved to the settlor to be exercised by him at any time during his life, with the concurrence of one trustee, and we held that the freeing of the remainder of the possibility of the exercise of that power, through its termination by the death of the settlor, effected a transfer which was the appropriate subject of a succession tax and that the tax was not retroactive since the termination of the power which was prerequisite to the complete succession did not occur until after the enactment of the statute. The Court said (p. 271):

" So long as the privilege of succession has not been fully exercised, it may be reached by the tax. See *Cahen* v. *Brewster*, 203 U. S. 543; *Orr* v. *Gilman*, 183 U. S. 278; *Chanler* v. *Kelsey, supra; Moffitt* v. *Kelly, supra; Nickel* v. *Cole, supra.* And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. *Bullen* v. *Wisconsin*, 240 U. S. 625. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another."

That, it is true, was said of a succession tax, and we are here concerned with a transfer tax. The distinction was there important for it was at least doubtful whether upon the death of the settlor there was any such termination, as to him, of a power of control over the remainder such as would have been

subject to a tax levied exclusively on transfers, since the power was not vested in him alone, but in him and another. See *Reinecke* v. *Northern Trust Company*, 278 U. S. 339, decided this day. But we think that the rule applied in *Saltonstall* v. *Saltonstall, supra*, to a succession tax is equally applicable to a transfer tax where, as here, the power of disposition is reserved exclusively to the transferor for his own benefit. Such an outstanding power residing exclusively in a donor to recall a gift after it is made in a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate srbject of a tax upon transfers.

But the plaintiff says that the tax here must be deemed to be a tax on property because the beneficiaries' interests in the policies were not transferred to them from the decedent, but from the insurer, and hence there was nothing to which a transfer or privilege tax could apply. Obviously, the word " transfer " in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. * * *

The petitioner points to no requirement, constitutional or statutory, that the termination of the power of disposition of property by death whereby the transfer of property is completed, which we have said is here the subject of the tax, must be preceded by a transfer directly from the decedent to the recipient of his bounty, of the property subject to the power. And we see no necessity to debate the question whether the policies themselves were so transferred, for we think the power to tax the privilege of transfer at death cannot be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax, *Chanler* v. *Kelsey*, 205 U. S. 466. " To make a distinction between a general power and a limitation in fee is to grasp at a shadow while the substance escapes." *Sugden, Powers* (8th Ed.) 396; see *Gray, Perpetuities* (3d Ed. 1915) § 526(b). And the nonexercise of the power may be as much a disposition of property testamentary in nature as would be its exercise at death. *Bullen* v. *Wisconsin*, 240 U. S. 625; cf. *United States* v. *Robbins*, 269 U. S. 315, 327; *Cohen* v. *Samuels, supra*.

See, also, *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

Whether there was a taxable transfer under the Revenue Act of 1916, was recently considered by the Circuit Court of Appeals, Fourth Circuit, in *United States* v. *Tyler*, 33 Fed. (2d) 724, and the language used by the court is pertinent to the question we are now considering. The facts were that in November, 1917, decedent transferred 349 shares of stock in the Kimball Tyler Co. to himself and wife, creating therein under the laws of Maryland an estate by the entireties in their favor. On his death in 1918, his wife became vested under the Maryland law with the sole ownership of the shares of stock. It was contended that as section 201 of the

statute imposes the tax upon transfers of the net estate and as an estate by entireties is not transferred to the surviving spouse, there was no intention to tax such an estate. The court, in holding that the value of the stock should be included in the gross estate, used the following language:

The statute, in so far as it requires the inclusion of estates by entireties in the valuation of the estates of decedents for purposes of estate taxation, is said to violate the Constitution because it is contended that in the case of an estate by the entireties there is no transfer to the survivor and consequently no basis for the imposition of an estate tax, and from this it is argued that the tax must be considered as a direct tax upon the property itself. We think, however, that this gives too narrow a meaning to "transfer" and ascribes too much importance to what are pure fictions of the law. It is true that husband and wife are said to be seized of the estate by entireties "per tout et non per my," that is to say, each during their joint lives is deemed seized of the whole estate and not of a moiety thereof; and it is true that, upon the death of one, the survivor is said to take no new interest because originally vested with the entirety. But these doctrines are pure fictions based upon the fiction of the unity of husband and wife. *Marburg* v. *Cole*, 49 Md. 402, 33 Am. Rep. 266; *Ades* v. *Caplan*, 132 Md. 66, L. R. A. 1918D, 276. As a matter of fact, husband and wife are not one person but two persons, and neither has absolute right in or control over the property so long as the other lives. Only upon the death of one does the other acquire absolute ownership with the right to sole and unrestricted use and possession and the right to alien and convey. Whatever form of technical expression be used, therefore, and whatever sophistries indulged, the fact remains that, upon the death of one of the parties, the survivor by operation of law succeeds to the interest which the decedent had in the property. As said by the Court of Appeals of Maryland in *Brewer* v. *Bowersox*, 92 Md. 567, 572, 573, 48 Atl. 1060, 1062, "The right of survivorship, which is one of its chief incidents, can not be destroyed except by the joint act of the two; and upon the death of either the other *succeeds* to the entire property or fund." It is the transfer of interest involved in this "succession" which is the basis of taxation under the statute. (Italics ours.)

After quoting excerpts from *Chase National Bank* v. *United States, supra,* the court said:

There can be no question in this case that we have the termination of the power of decedent over the property, and that this inures to the benefit of the surviving spouse, whose ownership prior to the death of decedent was subject to the rights of decedent therein. And there can be no question, also, that we have a "shifting of the economic benefits of property which is the real subject of the tax." As said in *Nichols* v. *Coolidge*, 274 U. S. 531, 541, "Taxes are very real things and statutes imposing them are to be estimated by practical results."

We are therefore of the opinion that in the instant case there is a transfer within the meaning of the statute.

The precise question that is now before us has been decided by Federal courts. In *Pennsylvania Company for Insurance on Lives, etc.,* v. *Lederer, supra,* which case arose in Pennsylvania, where the common law rule has been accepted as in New York, namely, that

the appointee of a power takes, not under the will of the donee of the power but under the will of the donor, the court, in deciding that the appointed property should be included in the decedent's gross estate for purposes of the Federal estate-tax law, used the following language:

The argument on behalf of the plaintiff begins with the proposition that no tax is imposed other than one imposed by the will of Congress, and that neither the executive nor the judiciary department of the government can add to the burden by construction.

The next premise is that Congress has measured the tax by the value of the property of the decedent, and of property passing under the power of appointment only to the extent to which property thus passes, and that in Pennsylvania (however the law may be elsewhere) property to no extent whatever passes under such a power.

One consequence of the acceptance of this view is that the amendment of 1918 made no change (at least so far as affects the estates of decedents in Pennsylvania) in the law. This view, although strongly urged and plausibly supported, we cannot accept. We do, however, accept the premise first laid down. The will of Congress to tax must be found expressed in the language of the act of Congress. The language employed must, however, be interpreted in the light of the situation presented to the law-making power when the statute was enacted. That situation was that a testator might be possessed of what may be properly called an estate of great value, consisting, however, in large part, as here, in the power possessed to name the beneficiaries of property held in trust. We can discover in the words of Congress no other meaning than the intention of measuring the tax to be paid by the gross value of all the property of the decedent which passed by will plus the value of all property which passed in practical effect by the same will, although it passed, not by virtue of dominion over property, but by virtue of a power of appointment. The thing done might in respect to the one be called the exercise of a right, and in respect to the other a power, but both were possessed and had a value which could be used as a measure.

We are unable to see any insurmountable obstacle to the acceptance of this construction of the act in the criticism that the tax levied is computed by a measure which has no relation to the thing measured. To measure the tax which the estate of one person should pay by the value of the estate of another person deserves as a scheme of taxation all the censure which counsel for defendant has heaped upon it. This is not what Congress has done. Congress, as already noted, has recognized that a person may have the indicated two things of value, and has adopted as its measure the value of that which belonged to the decedent, to which is added as an increment the value of that over which the testator had the power of control to the extent to which that control was exercised. This tax is an excise tax. It is levied upon the privilege enjoyed by one who makes disposition of property to take effect at his death. How such a tax shall be measured is wholly within the control of Congress. The measure which Congress has adopted may be one which the executive or members of the judiciary might commend or condemn, but neither their commendation nor condemnation changes or can change what Congress has done. When legislation is passed which is in conflict with what are recognized to be sound principles of legislation, the expression is an intelligible one that such legislation is unconstitutional. This only means, however, that it is based upon wrong or unsound principles of legislation.

In *Fidelity-Philadelphia Trust Co.* v. *McCaughn*, 34 Fed. (2d) 600; which involved the same statute we have here, the court said:

When the Congress passed the Act of 1919 [1918] and added to the property which it had already included in the gross estate of the decedent for tax purposes property passing under a general power of appointment exercised by the decedent, its purpose could only have been to extend the incidence of the tax to property which had not previously been subject to it. If the plaintiff's position were correct, section 420(e) of that act would have added no new subject to those already selected for taxation. In that event its purpose could only have been to clarify the Act of 1916. But that suggestion was expressly rejected by the Supreme Court which considered the effect of the Act of 1919 in *U. S.* v. *Field*, though that Act had been passed too late to directly affect the case then before the Court.

The power of Congress, in creating a new field for taxation, to impose taxes entirely without regard to the characteristics given to the property so taxed by the law of its situs was recognized by the Court in *Rosenberger* v. *McCaughn*, 25 Fed. (2d) 699, in which case the Court by Judge Wooley said:

"It is established beyond question that the law of the state in which property is situated governs federal courts in many things; in descent, alienation and transfer and the effect and construction of wills, *DeVaughn* v. *Hutchinson*, 165 U. S. 566; but whether it governs the federal government in the performance of its sovereign power to levy taxes is another question, and is the precise question here.

"True, state decisions sometimes control federal legislation, for instance, in determining a deduction allowed by the federal estate tax, but that is because of the express provision—or permission—of the federal act which authorizes deductions of such charges as 'are allowed by the laws of the jurisdiction under which the estate is being administered.' *Lederer* v. *Northern Trust Co.*, 262 Fed. 52 [U. S. Tax Cases, 376]. But whether the federal government is limited in its selection of subjects for taxation by rules of state courts in respect to property within the state's jurisdiction is another matter * * *"

and the court held that although the instrument in question was a sale in Pennsylvania, nevertheless under the general revenue statute the income arising from it would be held to be income which was taxable.

The Congress thus had the power to tax any transmission of property effected by death even though by the law of the decedent's domicile such property was not part of his estate. In view of the construction of the Act of 1916 given by the Court in *U. S.* v. *Field*, the enactment of section 402 (e) of the Act of 1919 [1918] indicates a clear intent to exercise that power. The question of an intent to act in harmony with state laws does not arise. In the sense that the Act of 1919 [1918] did not create any diversity in the incidence of the tax in the different states it operated in harmony with the state laws. In the sense that it included a subject of taxation which in no state was part of the decedent's estate, the Congress was acting in disregard of state rules of property.

\*        \*        \*        \*        \*        \*        \*

The purpose of the Revenue Act is to establish a tax upon the transmission of property and not upon the property itself. A logical explanation of the inclusion of property passing under general powers of appointment and the exclusion of property passing under special powers is that where the original

testator has limited the right to appoint to certain named beneficiaries or to a limited class of beneficiaries, it is he and not the donee of the power who in the broadest sense transmits the property to the beneficiaries. The donee's exercise of such narrow and limited powers may be taken rather as a mere stage in the original scheme of inheritance than as an independent source of descent. In such case, it is really the death of the original testator which may reasonably be taken as the transmission of the property for the purpose of taxation. Where, however, the donee has full power to direct the property to any beneficiary that he pleases, there is in a real sense a transmission of it from him rather than from the original testator. The important thing is the latitude of the donee's power of disposition rather than the quantum of the interest which he may dispose of or the time of its vesting. Under this view it is of little moment whether the property itself is a fee or less than a fee; whether it is a legal or an equitable interest; or whether it is susceptible of immediate enjoyment or its enjoyment is postponed until a future period.

In the case of *Whitlock-Rose* v. *McCaughn,* 15 Fed. (2d) 591; affd. 21 Fed. (2d) 164; while it appears from the opinion that the only question presented was whether the power of appointment therein involved was a general power, the opinion contains some pertinent language:

\* \* \* In construing any legislative enactment, aid may be sought from the situation unaffected by the legislation; the need which was felt for a change and the change sought to be effected. This is the time-honored phrase of "the old law; the mischief and the remedy." So far as this leads us to delve into the legislative mind, we have found that the motive for the adoption of the phrase in question was to bring about as nearly as it could be reached a uniformity throughout the United States in the admeasurement of the tax. If it was measured "by the estate passing," there was no such uniformity for the reason that what constituted the estate of a decedent received a different answer in different states. There was the additional motive of making property taxable, if in practical effect it formed part of the decedent's estate.

\* \* \* It has been authoritatively ruled for this circuit that this statute was framed to meet the practical situation of the enjoyment of possession passing by succession at death whether what passed formed part of the estate of the decedent (as that phrase is interpreted in different jurisdictions) or not, if the practical effect and substantial result was the same as if that to the enjoyment of which the beneficiary succeeded, had formed a part in every sense of such estate. *McCaughn* v. *Girard Trust* (C. C. A.) 11 F. (2d) 520.

\*       \*       \*       \*       \*       \*       \*

Congress has sought to give us as definite a measure of this tax as can be adopted. It is measured by the value of the estate of the decedent, to which is to be added the value of "any property passing under a general power of appointment exercised by the decedent by will or by deed," etc. \* \* \*

In *Minis* v. *United States, supra,* the Court of Claims took the same view under the Revenue Act of 1921, as did the courts in the above referred to cases.

A further contention advanced by petitioner is that paragraphs (a) and (e) of section 402 of the Revenue Act of 1918 should be read together with the premise in mind that Congress did not intend to

include in a decedent's net estate property which was not a part of such estate under the laws of the State wherein decedent resided at the time of her death. As to the contention that paragraphs (a) and (e) should be read together, we are unable to agree with petitioner, as it is our opinion that the Congress was enumerating in these paragraphs certain miscellaneous items of property which should be included in a decedent's gross estate. Each paragraph provides for the inclusion of a different type or class of property and it can not be said that one class is subordinate to or dependent upon the provisions of the preceding paragraph in determining whether the property or property interest therein specified should be so included.

While this question has not to our knowledge been specifically decided by the courts, it is interesting to note the language of the Supreme Court in *Reinecke* v. *Northern Trust Co.*, *supra*. In that case the Supreme Court was considering whether certain trust funds should be included in decedent's gross estate under paragraph (c) of section 402, and in the course of its opinion referred to "the miscellaneous items of property" required by section 402 to be brought into the gross estate for the purpose of computing the tax. We are satisfied that each paragraph in section 402 applies to separate and distinct items of property or property interests, and that each paragraph in the section must be construed without regard to its preceding or succeeding paragraph, except as the general intent of the Congress is to be determined from a reading of the entire section.

In view of the foregoing we are of the opinion that the value of the various trust properties should be included in the gross estate of the decedent as property passing under a general power of appointment exercised by the decedent.

In *Brooklyn Trust Co., Executor*, 13 B. T. A. 174, we reached the conclusion under a similar provision of the Revenue Act of 1924 that the value of certain trust property should not be included in the decedent's gross estate. The trust was created by the will of the decedent's mother, the income therefrom to be paid to decedent for life, and upon her death the principal and any unexpended income to the decedent's issue or to such person or persons as she directed. The decedent by her will left all her property, and all property which she was authorized to dispose of by her mother's will to her issue. We held that the trust corpus did not pass under the exercise of the power of appointment, because under our construction of the will "if the daughter had issue, such issue was to receive the property in question unless other persons were appointed by her to receive the same. The power of appointment was operative only

to the extent of permitting the daughter to designate some person (or institution) other than her issue to receive the remainder." In other words, construing the will in that proceeding, we were of the opinion that the power of appointment in the decedent was limited to the designation of persons other than her issue, and as no such designation was made, the power was not exercised. For that reason the instant proceeding is clearly distinguishable.

The second issue raised by the pleadings relates to the value of 294 shares of the Cadwalader Estates. The record and the proof show that 306 shares of this corporation's stock were included in decedent's gross estate by the respondent at $345 per share. The value contended for by the petitioner is approximately $300 per share, which value was arrived at by discounting the distributions of capital and income at a rate of 7 per cent, such distributions having been made during the period between the date of decedent's death and the date of the hearing of this proceeding. The facts show that $345 per share was distributed as liquidating dividends and that $52.50 per share was distributed as ordinary dividends, and that approximately $10 per share remains to be distributed. The evidence of record which points to the value contended for by the petitioner consists of the above mathematical calculation made by the secretary of the corporation, who was also a certified public accountant, and his testimony that there was no " open market " for the stock. This evidence fails to convince us that the value fixed by the respondent is erroneous. The value contended for by the petitioner is admittedly based on conditions which existed seven years after the decedent's death, whereas it is the fair market value at the basic date which is controlling and, in our opinion, the value fixed by respondent must stand until overcome by evidence showing a different value on said basic date. In this disposition of the case the unexplained discrepancy in the number of shares becomes immaterial.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

PHILLIPS dissents.

STERNHAGEN and MURDOCK concur in the result only.

———

ARUNDELL: I concur in the result. An examination of the facts in the case of *Helen M. W. Grant Estate*, 13 B. T. A. 174, cited in the Board's decision in this case, fails to disclose any ground upon which to base a distinction between it and the case in hand. In both cases life estates were created with remainders over, and the remain-

ders were subject to disposition by the beneficiaries of the life estate by testamentary exercise of powers of appointment. In both cases the donees of the powers purported, by will, to exercise them. Also, in both cases the appointees were the same persons as the remaindermen. From this comparison of the two cases it seems to me that they should both be decided the same way, and in view of the Board's action in the instant case the *Grant* case should be specifically overruled.

SMITH and MILLIKEN agree with the above.