FIRST WISCONSIN TRUST COMPANY as Trustee, etc., Respondent, vs. HELMHOLZ, Administrator, Respondent, and HELMHOLZ and another, Appellants.

*April 1—April 30, 1929.*

*H. A. Sawyer* of Milwaukee, guardian *ad litem,* for the appellants.

*Miller, Mack & Fairchild* of Milwaukee, for the respondent First Wisconsin Trust Company.

For the respondent Waldemar C. Helmholz, individually and as administrator, there was a brief by *Lines, Spooner & Quarles,* attorneys, and *James Quarles,* of counsel, all of Milwaukee, and oral argument by *James Quarles.*

OWEN, J. Irene C. Helmholz, prior to her death, was the wife of Waldemar R. Helmholz, and Josephine Mary Helmholz and Waldemar Robert Helmholz were her children, all of whom she left surviving her. She was a daughter of Patrick Cudahy. On the 7th day of June, 1918, she owned 999 shares of the capital stock of a corporation known as the Patrick Cudahy Family Company. All of the capital stock of this company was held by members of Patrick Cudahy's family. At the suggestion of Patrick Cudahy the owners of all of the capital stock of said cor-

poration, including deceased, joined in a trust deed by which they conveyed all of their capital stock to the Wisconsin Trust Company, predecessor of plaintiff, as trustee, for the uses and purposes therein expressed. The instrument provided that the trustee shall hold the shares of stock so transferred to it, receive all dividends paid on the stock, and

"Fourth. To pay and distribute the net amount of such dividends remaining after the payment of expenses of administration as aforesaid from time to time as follows, to wit:

"A. To each subscriber as long as he or she shall live, the net dividends received in respect of the shares of stock by him or her respectively transferred and assigned as aforesaid.

"B. Upon the death of any subscriber, to pay to such then living appointee or appointees as such deceased subscriber in and by last will and testament admitted to probate shall designate and appoint, the net dividends received in respect of the shares of stock by such subscriber transferred and assigned as aforesaid or such portion or portions thereof as such appointment shall direct. No appointment hereunder shall be effective for a longer period than the natural life of the appointee.

"C. If any subscriber shall die without making appointment as aforesaid, or if any appointee of such subscriber shall not be entitled to take, or upon the termination of the term of any appointment, then said trustee shall from time to time pay the net dividends received in respect of the shares of stock by such subscriber transferred and assigned as aforesaid, or such portion thereof as shall be affected by such failure to appoint or inability of the appointee to take, or termination of the term of appointment, to the issue of such subscriber living at the time of distribution proportionately by right of representation."

These are the only provisions of the instrument which seem material here. Irene C. Helmholz died October 19, 1927, having previously, on January 22, 1921, made her will, which is as follows:

"I, Irene C. Helmholz, being of sound mind—this 22nd day of January, 1921—declare this to be my last will and

testament—do hereby bequive (bequeath) to my Husband, all my possessions—Irene C. Helmholz." (Witnesses.)

The will is in her own handwriting and was written without the aid or advice of counsel. The question upon which a construction is desired is whether the will constituted an exercise of the power of appointment by which she constituted her husband beneficiary of the dividends accruing from or paid upon the 999 shares of stock conveyed by her trust deed.

At the outset the appellants challenge the jurisdiction of the circuit court over this proceeding. At the time this proceeding was instituted the estate of Irene C. Helmholz was in the course of probate in the county court of Milwaukee county. It is contended by appellant that under such circumstances the circuit court should not have assumed jurisdiction of the case, in obedience to our decision in *Cawker v. Dreutzer*, 197 Wis. 98, 221 N. W. 401. The present action was instituted prior to the decision in the *Cawker Case*. While it was held that the circuit court should not have entertained jurisdiction in the *Cawker Case*, this court refused to dismiss the case because of the uncertainty theretofore existing with reference to the jurisdiction of the circuit court in such matters and made final disposition of the case in the interests of justice. In that case it is held that whether the circuit court has jurisdiction of proceedings for the construction of a will depends upon whether the county court before which an estate is being administered can afford as adequate and efficient a remedy as the circuit court. Where such power on the part of the county court obtains, the circuit court should not assume jurisdiction, and that to do so will hereafter be treated as reversible error. We reaffirm the rule as so stated. The same reasons that influenced this court to make final disposition of the *Cawker Case* are present here, and without inquiring whether the county court could afford as adequate, complete, and efficient a remedy as the circuit court in this case, we will not dismiss it upon this

jurisdictional question, the ground being that at the time this proceeding was instituted a conclusion that the circuit court was the proper court in which to institute this proceeding was not unwarranted under our prior decisions.

We have before us for construction a very brief will. It is not complicated in any of its provisions. No ambiguities are apparent upon its face. The testatrix bequeaths to her husband "all my possessions." Uncertainties arise upon applying the will to her estate. Her estate consisted in part of dividends accruing upon corporate stock the legal title to which rested in the trust company. It is conceded that by the terms of the trust deed she had the power to designate a person or persons to whom such dividends should be paid after her death. While it is clear that by the terms of the will she intended to give to her husband all of her possessions, it is contended that the phrase "all my possessions" does not include these dividends which are to be earned, declared, and paid in the future—that such dividends do not constitute possessions.

We are to construe this will as we are to construe any other will, with a view of ascertaining and giving force and effect to the intention of the testator. No provision of statute is cited to our attention which either controls or affords us assistance in the matter. The specific question is whether testatrix intended to exercise the power of appointment which she reserved to herself in the trust deed. While there are many decisions holding that, generally, language such as we find in this will, will be construed as an exercise of the power of appointment on the part of the testator (a) where the power is expressly referred to in the instrument of execution, or (b) where the property to which the power relates is specifically mentioned in that instrument, or (c) where the instrument of execution would become meaningless and wholly inoperative, it being reasonably plain that the donee in any one of such cases intended by the instrument to execute the power, such decisions have no applica-

tion here. This will contains no reference to the power or the instrument by which it is reserved. The property to which the power relates is not mentioned, and it appears that there is property aggregating $250,000 to which the will unquestionably applies.

There is nothing in the will itself to indicate that the testatrix intended to exercise her power of appointment in favor of her husband. It is to be remembered, too, that her power in this respect was created by her own instrument, which fact may be urged as tending to charge her with knowledge that unless she exercised this power in her last will and testament the dividends under consideration would go as provided in the trust deed. The considerations so far mentioned tend to negative any intent on her part that her will should constitute an exercise of the power of appointment. Then, too, it is said, in support of the same conclusion, that the phrase "all my possessions" is not a phrase which includes within its proper meaning her intangible or her inchoate property such as the future earnings of this stock.

Technically speaking, the term "possessions" when used in the sense in which it is here employed means property over which one has dominion and control to the exclusion of all others. See Webster's Dictionary; Words and Phrases. In a technical sense it is a less inclusive word than the term "property." It is not certain, however, that this is the popular conception of the meaning of the term. It is frequently used as a most sweeping expression, intended to include anything and everything of value belonging to the possessor. The phrase "all my earthly possessions" is frequently used in common parlance as the most sweeping phrase that can be designed to include everything of value owned by a given person. Whether the testatrix employed this phrase in its inclusive or exclusive sense is a very important inquiry. Her will indicates conclusively that

she was not learned in either the niceties or the formalities of the law. To this also various members of her family bear testimony. Whatever was intended by the language used, it is apparent that it was not used carefully and deliberately or in an effort towards refinement of expression. It is apparent that no such talent was applied to the preparation of this will. It is a "rough and ready" document, impulsively drawn, the language employed therein being that which intuitively came to the mind of the testatrix. While the intent of the testatrix is to be derived from the language used by her, the language so used is to be ascribed its popular rather than its technical meaning, and we cannot say that the popular meaning of the term "possessions" coincides with its strict technical or analytical meaning. But our inquiry cannot end here. Under the circumstances it is our duty to place ourselves as nearly in the position of testatrix as competent extraneous testimony will permit in order to ascertain and effectuate her intention.

Looking to the record, we find that the testatrix never really comprehended the nature of the trust deed. She signed it in reliance upon her father, who devised the plan for the purpose of keeping the corporation under family control and preventing the dissipation of his estate by his children. He had the trust deed prepared, brought the members of the family together, presented it to them, and told them to sign it. According to the members of her own family, the testatrix never appreciated that she had lost the control and dominion over or the ownership of this stock. She always regarded the stock the title to which was vested in the trustee as her own property and herself as a stockholder in the corporation. Although the power of appointment was reserved to her by her own deed, she probably never realized its nature or consequences or the restrictions that were placed upon her power of disposition of the stock itself. Furthermore, it appears that she and her husband

were most congenial, lived happily together, and she reposed in him the utmost confidence. It further appears that for many years she had entertained the notion, frequently expressed, that the possession of large sums of money was a most harmful influence upon the lives of young children. She had even criticised the acts of her father in distributing large portions of his estate to the members of his family.

So we have a testatrix whose attitude of mind consistently and persistently opposed the vesting of immature children with large sums of money. She lived happily with her husband and reposed the utmost confidence in him. Her will itself most forcibly testifies to such confidence, as it without doubt vests him with title to all her tangible property, amounting to $250,000. She had a most hazy conception of the change which the trust deed had wrought upon her rights in and title to the corporate stock conveyed by that deed. In drafting her will she used the language of the layman. So far as the terms of her will were concerned her husband was constituted her sole beneficiary. We glean no purpose from the terms of the will to make any other person the beneficiary of her bounty. She probably was not conscious of the necessity of exercising her power of appointment by her last will and testament, and a specific intent to that end probably was not present in her mind; but it does most satisfactorily appear that she intended to make her husband the beneficiary of all and everything of value which she could confer upon him by her last will and testament. If this purpose on her part is to be given effect, the will must be construed as an exercise of the power of appointment. Not to do so would be recreant to the sacred trust with which the judiciary stands charged, inconsistent with established principles of law, and, especially, the uniform rulings of this court. We feel that the lower court properly construed the will, and the judgment should be affirmed.

*By the Court.*—So ordered.