CORTLANDT F. BISHOP, EXECUTOR OF THE WILL OF FLORENCE V. C. PARSONS, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25131. Promulgated June 30, 1931.

*Thomas D. Hewitt, Esq.*, for the petitioner.
*Lewis S. Pendleton, Esq.*, for the respondent.

924

OPINION.

MORRIS: The first question is whether, as a matter of law, petitioner is entitled to deduct from the gross estate the value of an alleged trust created for charitable purposes by paragraph seven of decedent's will. The Revenue Act of 1921, which governs, provides in part as follows:

SEC. 403. That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) The amount of all bequests, legacies, devises, or transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such religious, charitable, scientific, literary, or educational purposes. This deduction shall be made in case of the estates of all decedents who have died since December 31, 1917; \* \* \*

The respondent contends that there was no valid trust created by the seventh paragraph of decedent's will, but at the same time conceding " that legal title to the property in question became vested in Cortlandt F. Bishop, and Margaret A. Delany under the seventh clause of the will, and that they held as trustees in the sense that they were given no beneficial interest in the property." Such a concession is exceedingly broad and somewhat difficult to reconcile with the conclusion which he would have us reach. It certainly admits that there was a separation of legal and equitable title, a prerequisite to the creation of a trust status. If he agrees that the parties were trustees and concedes that they were vested with the legal title to the property in question, it would be interesting to know where and in whom he would concede the equitable title or interest to be. The only possible answer, in view of such a concession, is that under the will the parties were expressly designated to act as trustees, under certain conditions, of specific property, and if it be admitted that they are trustees for any purpose whatsoever of this particular property, the equitable or beneficial interest must necessarily lie in the charitable work of the Mission.

It is well settled that if there are sufficient words to raise a trust, coupled with a definite subject and a certain and ascertained object,

Story Eq. Jur. 964, quoted with approval in *Gough* v. *Satterlee*, 52 N. Y. S. 492, or, as laid down in another New York case, if there be found (1) a designated beneficiary; (2) a designated trustee; (3) property so distinguished as to pass title to the trustees; (4) the actual delivery of the property, or an assignment thereof, to the trustee, with the intention of passing legal title to him as trustee, *Brown* v. *Spohr*, 84 N. Y. S. 995; affd., 180 N. Y. 201, all of the essential elements of a valid trust are present.

As we view it, the respondent's chief concern lies in the fact that the existence or duration of the trust rested, finally, in the trustees themselves, since the creation and duration thereof depended entirely upon whether they wished to enter upon the duties of trustees and continue the use of the property for mission work. Naturally, no one can be compelled to serve as a trustee against his will. Therefore, had the trustees not chosen to take up and continue the work of the Mission in accordance with the expressed wishes of the decedent, and had they not accepted the trust, no title to the property would have passed and the trust would never have come into being. But where a trust has been validly declared and there has been an acceptance, or any act has been done under the will, evidencing acceptance, *Lewis* v. *Baird*, 15 Fed. Case No. 8316, legal title to the *res* vests in the trustees and the trust springs into existence, and it continues to exist, though the period of its life be short, until the fulfillment of its purpose or the happening of the event or condition subsequent, imposed by the settlor, bringing the trust to a close—which here would have been if, and when, the property had been converted to other uses or in any event upon the death of Margaret Delany. No cases have been cited, nor do we find any, which hold that because a trust must, and necessarily will, cease to exist at the will or death of the original trustees, where of course all of the other elements necessary to the creation of a valid trust are found, that no trust ever came into being. That, it seems, is the gist of the respondent's position. The trust comes into existence upon the happening of the conditions precedent and ends with the happening of the conditions subsequent, during all of which time it is subject to the same control and supervision as other trusts.

It is well recognized that, where a testator's intention can be ascertained, that intention must be carried out if legally possible. *Colton* v. *Colton*, 127 U. S. 300. But we are not forced to rely upon speculation as to what was intended. In the first place, as she indicated in her will, the decedent was very much interested in the conduct of this Mission and expressed the wish that it be continued after her death. The premises upon which the Mission was carried on were devised to the trustees for mission purposes only, " to have and to hold to them * * * so long as they * * * will

continue to use them for Mission work," and also for the purpose of financing its conduct she bequeathed to them $400,000 " in trust," the income from which to be applied to and used for the operation of the Mission. These words seem entirely sufficient to raise a trust and anything additional would have amounted to pure surplusage. The beneficiary and trustees were expressly designated and the properties involved were clearly distinguished so as to pass title to the trustees. Upon the death of the decedent, at which time she was carrying on the work of the Mission herself, which was one of the conditions precedent to the creation of the trust, the said designated trustees, being willing to continue the Mission in accordance with the expressed wishes of the decedent, accepted the responsibilities reposed in them and then the legal title to the properties vested in them.

Therefore, adhering strictly to all of the tests for the creation of a trust and bearing in mind at the same time that there is no question of bad faith or subterfuge for the evasion of tax, nor is there any imputation of such, we are of the opinion that a trust was created and that the bequest here was to " trustees " and that it was for " charitable " purposes within the meaning of the statute and that the respondent erred in holding otherwise.

Respecting the several cases relied upon by the respondent, it will suffice to say that we have carefully considered them and have found them clearly distinguishable from the instant case and we feel, therefore, that a detailed discussion thereof will serve no useful purpose.

It was stipulated by the parties that the value of the trust at the time of decedent's death aggregated $447,500; that Margaret A. Delany was sixty-seven years of age at the time of decedent's death, and had a life expectancy at that time of 7.21699 years. Using this value and the said Margaret A. Delany's life expectancy, the petitioner has deducted the sum of $161,480.15, as the value of the trust on October 15, 1922. The respondent has not contested the amount but relies solely upon his contention that no estate or interest in either real or personal property was devised or bequeathed to charity by the seventh paragraph of decedent's will, and that the said clause gave to decedent's son and Margaret A. Delany a mere authority or power to use the property for the work of the Mission so long as they or she saw fit to continue the work of said Mission. In view of our foregoing discussion, if petitioner has correctly computed the value of the trust created by the decedent, then the estate is entitled to a deduction in that amount. *Ithaca Trust Co.* v. *United States,* 279 U. S. 151.

The second issue comes here on amended answer by respondent and presents the question of whether decedent's gross estate should include

certain property held in trust, amounting to $172,442.87, over which decedent had a power of appointment by virtue of her father's will. The statutory provision regarding the inclusion of property subject to a power of appointment in a decedent's gross estate is contained in section 402 (e) of the Revenue Act of 1921, which provides:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* · \* \* \* \* \* \*

(e) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth;

The stipulated facts show that Benjamin H. Field, the decedent's father, gave her, under the terms of his last will and testament, a power of appointment with respect to a portion of the trust fund created for the benefit of his wife and children. If the decedent failed to exercise the power of appointment so given, or if the power as exercised proved ineffectual, then the trustees were to give the designated portion of the trust corpus to decedent's issue. On October 15, 1922, the date of decedent's death, the value of this trust property, subject to decedent's power of appointment, was $352,442.87. In her will the decedent specifically exercised her power of appointment by giving legacies to persons other than her son, aggregating the sum of $180,000, and leaving thereby a residue in the trust corpus of $172,442.87. The latter sum was specifically appointed to decedent's son by paragraph eleven of her will.

The petitioner contends that under the law of New York the trust fund over which decedent had a power of appointment was no part of her estate; that property subject to a power of appointment must actually pass by an exercise of the power before it can be included in a decedent's gross estate; that decedent's son took a vested remainder in the trust corpus upon the death of his grandfather, subject, however, to be divested by the exercise of the power of appointment by decedent; that the law of the State of New York determines whether, and to what extent, the exercise in form by decedent transferred or passed the property subject to the power of appointment; that the will of Benjamin H. Field gave to the remaindermen in expressed terms any part of the trust estate not effectually appointed by decedent and no part of the trust estate was effectually appointed within the donor's meaning of these words by the decedent to her son; and, finally, that any tax levied with respect to that part of the trust fund which went to decedent's son would be a direct tax, and therefore beyond the power of Congress to impose.

The respondent concedes that the trust fund over which decedent had a power of appointment formed no part of decedent's estate for administration under the laws of New York, but contends that the gross estate for Federal estate-tax purposes is purely statutory and includes property which is not an asset for purposes of administration. The respondent contends that termination of the power of control at death completes the shifting of the economic benefits of property which is the real subject of the Federal estate tax.

That the power was general in its scope and meets the test of the statute in that particular admits of no doubt. In describing the power, Benjamin H. Field provided that after the death of his children the trustees were to " convey and deliver the principal of such share in absolute ownership to such person or persons as such child [the decedent] by last Will and Testament or any writing in the nature of a last will and testament, * * * may direct and appoint." *Whitlock-Rose* v. *McCaughn*, 21 Fed. (2d) 164. Nor is there any doubt that the decedent expressly exercised the power in favor of her son, who was also a residuary legatee under the will of his grandfather.

It is our opinion that *Edward J. Hancy, Executor*, 17 B. T. A. 464, a New York case, is dispositive of the question presented here and in view of the fact that we there considered practically all of the contentions urged here, and reviewed the decided cases, with particular reference to those decided by the New York courts, a lengthy discussion here is useless. In that case the decedent was the donee of general powers of appointment under the wills of her father and brother. By her will she exercised those powers, together with another certain power, in favor of her daughter, who was also a remainderman under those instruments. We held there that the appointed property should be included in the decedent's gross estate. One of the cases which we particularly relied upon there was the decision of the Circuit Court of Appeals for the Fourth Circuit in *United States* v. *Tyler*, 33 Fed. (2d) 724. Shortly after the Fourth Circuit's decision, the Third Circuit handed down an opinion in *United States* v. *Provident Trust Co. of Pennsylvania et al., Administrators*, 35 Fed. (2d) 339, contra to the *Tyler* case. Upon appeal to the Supreme Court the *Tyler* and the *Provident Trust Co.* cases were considered together, the *Tyler* case being affirmed and the *Provident Trust Co.* case being reversed, *Tyler* v. *United States*, 281 U. S. 497. Petitioner has relied heavily upon the Circuit Court's opinion in the *Provident Trust Co.* case, but since the briefs in this case were filed the Supreme Court has definitely overruled the Third Circuit and affirmed the *Tyler* case.

Our decision on the second issue is that respondent should include the sum of $172,442.87 in decedent's gross estate as property transferred or passing by decedent's exercise of a general power of appointment.

*Decision will be entered under Rule 50.*