WALDEMAR R. HELMHOLZ, EXECUTOR OF THE ESTATE OF IRENE C. HELMHOLZ, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50485.   Promulgated May 23, 1933.

*James Quarles, Esq.,* for the petitioner.
*Lewis S. Pendleton, Esq.,* for the respondent.

OPINION.

SMITH: No jurisdictional question has been raised by either party to this proceeding, but because of the record made herein we deem it advisable to consider that question. Cf. *Martha M. Hanify*, 21 B.T.A. 379. The deficiency notice was addressed to " Waldemar R. Helmholz, Executor, Estate of Irene C. Helmholz." The petition, captioned " WALDEMAR R. HELMHOLZ, as sole devisee and legatee under the will of IRENE C. HELMHOLZ, deceased," was based upon that notice. In his petition the petitioner alleged, and the respondent admitted, that " the Petitioner was and is the sole beneficiary under the will of said Irene C. Helmholz, and it is in that capacity he prosecutes this appeal." It appears that the petitioner duly administered the estate, made final settlement of his accounts, and was discharged as administrator by the County Court of Milwaukee County in September 1928. It does not appear that the petitioner ever notified the Commissioner of such final settlement and discharge. The settlement of the estate and the final discharge of the administrator before the tax obligations were discharged neither extinguished the tax nor relieved the petitioner from his liability under the law to pay it. Petitioner has invoked the jurisdiction of this Board for a redetermination of the deficiency set forth in the notice addressed to him as executor of the decedent's estate. No one has been misled as to the liability asserted. In these circumstances we accept jurisdiction of the proceeding. *Charles Hallock Whitehead, Executor*, 24 B.T.A. 1111; *Jessie Smith, Executrix*, 24 B.T.A. 807; *Commissioner* v. *New York Trust Co.*, 54 Fed. (2d) 463; certiorari denied, 285 U.S. 556.

The primary issue is whether the 999 shares of stock, or any interest therein, which the decedent placed in the trust created by the decedent, her parents, brothers and sisters in 1918, should be included in her gross estate. The respondent contends " that the value of the property in question was properly included in the gross estate under the provisions of Section 302 (c) and Section 302 (d) of the Revenue Act of 1926." The petitioner insists that not even the life interest of the decedent's appointee should be included in the gross estate. In so far as material hereto, section 302 of the Revenue Act of 1926 is as follows:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case

of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

*       *       *       *       *       *       *

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

In construing the decedent's will as a valid exercise by Irene C. Helmholz of the power of appointment reserved in the trust agreement, the Supreme Court of Wisconsin, in *First Wisconsin Trust Co.* v. *Helmholz*, 198 Wis. 573; 225 N.W. 181, 183, said:

* * * She had a most hazy conception of the change which the trust deed had wrought upon her rights in and title to the corporate stock conveyed by that deed. In drafting her will she used the language of the layman. So far as the terms of her will were concerned, her husband was constituted her sole beneficiary. We glean no purpose from the terms of the will to make any other person the beneficiary of her bounty. She probably was not conscious of the necessity of exercising her power of appointment by her last will and testament, and a specific intent to that end probably was not present in her mind, but it does most satisfactorily appear that she intended to make her husband the beneficiary of all and everything of value which she could confer upon him by her last will and testament. If this purpose on her part is to be given effect, the will must be construed as an exercise of the power of appointment. Not to do so would be recreant to the sacred trust with which the judiciary stands charged, inconsistent with established principles of law, and especially the uniform rulings of this court.

The Supreme Court of Wisconsin affirmed the trial court in holding that the decedent's husband was "beneficiary of the dividends accruing from or paid upon the 999 shares of stock conveyed by her trust deed."

By the provisions of the trust deed, the remainders after the life estate of the grantors and their appointees were vested in the issue of such grantors, and, failing issue, in a designated charitable trust—such remainders taking effect upon the termination of the primary trust. If it were not for the provision for the termination of the trust and the power of appointment reserved by the decedent, we would have no hesitancy in holding that the corpus of this trust should not be included in the decedent's gross estate under the ruling in *May* v. *Heiner*, 281 U.S. 238, which was followed *per curiam* in *Burnet* v. *Northern Trust Co.*, 283 U.S. 782; *Morsman* v. *Burnet*,

283 U.S. 783; and *McCormick* v. *Burnet*, 283 U.S. 784. See also *Elizabeth B. Wallace, Executrix*, 27 B.T.A. 902.

In *Charles H. W. Foster et al., Executors*, 26 B.T.A. 708; affd., C.C.A., 1st Cir., March 20, 1933, we said:

\* \* \* Where, as here, gifts are made irrevocably to a trust and the donor reserves the income to himself for life and the right to designate the beneficiaries of the income after his death, which right is exercised in accord with the trust agreement, it is doubtful whether any portion of the trust property should be included in the decedent's gross estate in view of the decision in *May* v. *Heiner, supra*. Such doubts should be resolved in favor of the taxpayer (*Gould* v. *Gould*, 245 U.S. 151, 153), particularly in view of the fact that immediately following the *per curiam* decisions in *Burnet* v. *Northern Trust Co., supra; Morsman* v. *Burnet, supra; McCormick* v. *Burnet, supra,* Congress amended section 302 (c) of the Revenue Act of 1926 by joint resolution (Public 131), approved March 4, 1931, which specifically provides for the inclusion of property transferred in trust where the transferor "has retained for his life \* \* \* the income from the property or \* \* \* the right to designate the persons who shall \* \* \* enjoy \* \* \* the income therefrom." The amendment was not retroactive and has been applied only to transfers "made after 10:30 P.M. \* \* \* March 3, 1931." Treasury Decision 4314. See *United States* v. *Field*, 255 U.S. 257.

The provision for the termination of the trust, "upon delivery to the \* \* \* trustee of a written instrument signed by all of the then beneficiaries, other than testamentary appointees, declaring said trust term at an end," did not render the trust revocable. The grantors of the trust are generally referred to as the subscribers, but assuming that the term "beneficiaries" embraces the grantors, no one of them could have revoked the trust alone. As was said by the Circuit Court of Appeals for the First Circuit in *White* v. *Erskine*, 47 Fed. (2d) 1014, 1016:

\* \* \* but where the decedent has no such power except by the consent of an adverse party as one of the beneficiaries, or as in this instance of the trustee for the beneficiaries, the right of revocation is gone from the donor and also all beneficial interest for taxing purposes under section 301 of the act.

See also *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339, 346; *Union Guardian Trust Co.*, 26 B.T.A. 1321, 1324.

In *Porter* v. *Commissioner*, 288 U.S. 436, the Supreme Court pointed out that:

\* \* \* Congress has progressively expanded the bases for such taxation. Comparison of § 302 with corresponding provisions of earlier Acts warrants the conclusion that (d) is not a mere specification of something covered by (a) but that it covers something not included therein. Cf. *Chase National Bank* v. *United States*, 278 U.S. 327. *Tyler* v. *United States*, 281 U.S. 497. *Gwinn* v. *Commissioner*, 287 U.S. ——. *Burnet* v. *Guggenheim*, 287 U.S. ——.
\* \* \* Subdivision (d) requires to be included in the calculation all property previously transferred by decedent, the enjoyment of which remains at the time of his death subject to any change by the exertion of a power by himself alone or in conjunction with another. \* \* \* Here the donor re-

tained until his death power enough to enable him to make a complete revision of all that he had done in respect of the creation of the trusts even to the extent of taking the property from the trustees and beneficiaries named and transferring it absolutely or in trust for the benefit of others. So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable. The transfers under consideration are undoubtedly covered by subdivision (d).

\* \* \* the reservation here \* \* \* while subject to the specified limitation [that there could be no change in favor of the grantor or his estate], \* \* \* made the settlor dominant in respect of other dispositions of both corpus and income. His death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. \* \* \*

In the instant proceeding, Mrs. Helmholz had irrevocably disposed of the corpus of the trust, and that property went to the remaindermen designated in the trust agreement, upon the termination of the trust. She had no power to alter, amend, or revoke the trust instrument that would effect such a disposition as was possible in the *Porter* case and bring the property within the purview of subdivision (d).

In *White* v. *Erskine, supra*, the Circuit Court of Appeals for the First Circuit, in construing subdivision (d) of the statute, said:

To hold that Congress under subdivision (d) intended under the guise of a tax on the transfer of property at death to impose a tax solely on a limited power of alteration of a trust, or a limited power of appointment under it, would be contrary, not only to the spirit of the act, but the express terms of section 301, *Leser, Executrix*, v. *Burnet, Com., supra; Fidelity-Phila. Trust Co.*, v. *McCaughn* (C.C.A.) 34 F. (2d) 600, 604, and so doubtful a construction that the contrary intent should be resolved in favor of the taxpayer, *Gould* v. *Gould*, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

Having found that the corpus of the trust here involved was not within the purview of subdivisions (c) and (d) of the statute, and by applying the cognate reasoning of the *Porter* case, it is reasonable to conclude that subdivision (f) covers property not otherwise specified in section 302. See also *United States* v. *Field*, 255 U.S. 257. That being the case, is the property here involved to be included in the decedent's gross estate by reason of her power of appointment?

We have had occasion to determine what " property passing under a general power of appointment exercised by the decedent \* \* \* by will " was to be included in the gross estate of such decedent. Where the appointment has been general and unrestricted and upon the exercise thereof effectively disposed of the corpus, we have held that the appointed property was includable in the gross estate. See *Emily Annette Agnus Leser, Executrix*, 17 B.T.A. 266; *Edward J. Hancy, Executor*, 17 B.T.A. 464; *Mary M. Lee, Executrix*, 18 B.T.A. 251; affd., 57 Fed. (2d) 399; *Cortlandt F. Bishop, Executor*, 23 B.T.A. 920; *Joseph Walker Wear et al., Executors*, 26 B.T.A. 682. See also *Stratton* v. *United States*, 50 Fed. (2d) 48.

In *John S. Montgomery et al., Executors*, 17 B.T.A. 491, we held that the respondent correctly included the present worth of certain equitable life estates in the decedent's gross estate under section 402 (e) of the Revenue Act of 1921, which is similar to the applicable provision of the 1926 Act here involved. In that case it appeared that in 1898 Samuel M. Child created a trust for the benefit of designated beneficiaries, including the decedent (Harriette Hall Morris). The trust continued until the death of the last surviving beneficiary. Upon the death of each beneficiary he or she had a general power of appointment over his or her interest in the trust, that is, to dispose of the income during the continuance of the trust and to dispose of the corpus upon the termination of the trust. The decedent exercised her power of appointment, but with void limitations over. In holding that the present worth of the life estates appointed by the decedent's will should be included in her gross estate, we ignored the remainders, which nevertheless passed to her descendents just as if she had failed to exercise her power of appointment. These facts distinguish the *Montgomery* case from the instant proceeding.

In *Leser* v. *Burnet*, 46 Fed. (2d) 756, the Circuit Court of Appeals for the Fourth Circuit in part reversed the Board's decision (*Emily Annette Agnus Leser, Executrix, supra*) and held that only property subject to a general power of appointment was to be included in the gross estate of the donee of such power. The court said:

\* \* \* The first question to be determined, therefore, is what is meant by a general power within the meaning of the act, and we think there can be no question that by a general power is meant one which may be exercised by the donee of the power in favor of any person whomsoever including the donee himself or his own creditors.

\*     \*     \*     \*     \*     \*     \*

In this respect, the case of a general power of appointment is analogous to that of a policy of insurance where the insured has the right to change the beneficiary and thus secure for his estate or his creditors the proceeds of the policy. In such case it is held that the proceeds of the policy may properly be included in the estate of the insured for the purpose of the estate tax. See *Chase Nat. Bank* v. *U.S.*, 278 U.S. 327, 335, 49 S.Ct. 126, 127, 73 L.Ed. 405, 63 A.L.R. 388, \* \* \*

\*     \*     \*     \*     \*     \*     \*

The inclusion for purposes of estate taxation of property transferred under a general power is analogous also to the inclusion of property transferred in trust with power of revocation reserved to the grantor. It is held that upon the grantor's death such property should be included in valuing his gross estate, upon the principle that the passing from him of the power and control over the property is taxable as a transfer. *Reinecke* v. *Trust Co.*, 278 U.S. 339, 345, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; *Saltonstall* v. *Saltonstall*, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565.

Except that the donee of a general power may exercise it in favor of his creditors and thus use the property which is the subject of the power for his

own use and benefit, there is no basis for including in his taxable estate property which is subject thereto ; for this right is all that passes from his estate by reason of his death. In *Y.M.C.A.* v. *Davis*, 264 U.S. 47, 44 S.Ct. 291, 292, 68 L.Ed. 558, the Supreme Court said: "What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of death." By this language we understand the court to mean that the tax is imposed on what is transferred from decedent as a result of his death (*New York Trust Co.* v. *Eisner*, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660; *Knowlton* v. *Moore*, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969) ; and it logically follows that, where nothing is transferred, as where property passes under a limitation in remainder, there is no transfer to tax. *Reinecke* v. *Trust Co., supra*. Nothing passes or is transferred from the estate of the donee in the case of a naked or special power of appointment, and Congress has recognized this fact by not requiring that property passing under a special power be included in the estate. It is only property subject to a general power— property of which the donee might have obtained the benefit by subjecting it to the payment of his debts—which is required to be included.

The court then proceeded to determine "whether the power created by the conveyance * * * is a general power" under the laws of Maryland, saying:

* * * Only by considering, not merely the language creating a power, but the effect and meaning which is given that language by the law of the state which governs the exercise of the power, can uniformity in the operation of the statute be attained.

Under the terms of the trust indenture involved in the instant proceeding, the only power of appointment reserved to the decedent was the power to appoint the beneficiary of her share of the income, and merely for the life of her appointee. Her power of appointment did not cover the corpus of the trust, which had irrevocably passed beyond her control and which went to her issue upon the termination of the trust. Her power to appoint a life beneficiary was restricted to a natural person and/or a charitable organization which, if appointed, could only receive the income during the remainder of the term of the trust.

General and special powers are defined in the Wisconsin Statutes (1927) as follows:

Sec. 232.05. *General Power.* A power is general when it authorizes the alienation in fee, by means of a conveyance, will, or charge of the lands embraced in the power, to any alienee whatever.

Sec. 232.06. *Special Power.* A power is special:

(1) When the person or class of persons to whom the disposition of the lands under the power to be made are designated.

(2) When the power authorizes the alienation by means of a conveyance, will, or charge of a particular estate or interest less than a fee.

Special powers in trust are defined in section 232.22 as follows:

A special power is in trust:

(1) When the disposition which it authorizes is limited to be made to any particular persons other than the grantee of such power.

(2) When any person or class of persons, other than the grantee, is entitled to any benefit from the disposition or charge authorized by the power.

The term grantee as so used includes the person in whom the power of appointment is vested by reservation, as in the instant proceeding. See section 232.58. While these definitions are a part of the real property law of Wisconsin, they are applied as the personal property law. *Cawker* v. *Dreutzer* (Wis.), 221 N.W. 401, 413. The power of appointment reserved to the decedent embraced an interest less than a fee, the disposition within the exercise of the power was limited to persons other than the grantee, and the benefit thereunder was restricted to the life of a natural person or a charitable organization for the remainder of the term. The power of appointment reserved to the decedent was therefore a special power (cf. *Cawker* v. *Dreutzer, supra*), and since the revenue act covers only property passing under a general power, the interest conveyed by the decedent's exercise of this special power of appointment, to wit, the life estate of this petitioner, should not be included in the gross estate. *Leser* v. *Burnet, supra.*

The secondary question is the fair market value of the one share of stock which the respondent has included in the gross estate at a value of $320, and which the petitioner contends had a fair market value of only $100. There were no sales of this stock, and when the petitioner sought to have it transferred to himself he was offered $100 for it. The restrictions upon the disposition of this stock were valid and enforceable under the law of Wisconsin. See *In re Laun,* 146 Wis. 252; 131 N.W. 366; *Casper* v. *Kalt-Zimmers Mfg. Co.,* 159 Wis. 517; 149 N.W. 754. Unlike the situation considered in *Estate of Louise N. Schulz,* 14 B.T.A. 419, the directors of the Patrick Cudahy Family Co. tendered $100 to the petitioner in an effort to purchase this share; it does not appear whether or not the tender was accepted. The appraisers for the State of Wisconsin considered the restrictions upon the transfer of this stock in determining a valuation of $100. When these restrictions are considered in the light of the dividend record of the corporation, and the fact that it was a close family affair, we are unable to conceive of a concourse of buyers and sellers that would give this stock the fair market value determined by the respondent. In these circumstances we sustain the petitioner's valuation of $100 for this share. Cf. *Herbert W. Eldredge,* 18 B.T.A. 194; *Richard deZ. Pierce et al., Administrators,* 22 B.T.A. 1070.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN dissents.